Please be seated. The clerk called the next case, please. 313-0969 Veterans Assistance Commission of Grundy County et al. Appellant, Cross Appellees by Brett Geiger v. County Board of Grundy County, Appellee, Cross Appellant by Michael Manningly and Kenneth Brought et al. Appellees by Megan Preston. Thank you. Mr. Geiger. Good morning. May it please the court. Counselors, thank you for taking the time this morning to discuss the case with us again. And welcome, Justice Schmidt, to the panel. The last time I stood before your honors, I believe I said it was a case about autonomy. And the central question to the case the last time we were here was to discuss the scope of V.A.C. The question was answered in that case that the county did not have the authority to dissolve or void a V.A.C. And then the case was sent back to the trial court to discuss whether either of V.A.C., the first or the second, I believe, as the vernacular was taken on by the court, the first being my client, in which the superintendent is Mr. Munson, the second being the V.A.C. being operated as superintendent by Mr. Buck. Let me ask you. If the goal of a V.A.C. is to help veterans, what's the difference whether it's V.A.C. 1 or V.A.C. 2? I mean, is the purpose of the V.A.C. to litigate in court and spend money on lawyers, or is it to spend money on veterans? Surely, it's to spend money on veterans. Well, then what's the difference? Who's in charge? Well, I suppose there's policy decisions that are made by a superintendent as to how the money is going to be spent. If one superintendent had the support or was operating the V.A.C., he might make decisions about whether more money should be spent on cars to drive veterans to hospitals, or more should be spent on infrastructure and staff to help guide people through the programs. So how that's done is going to be a decision of the V.A.C. and the superintendent. Isn't that normally done by a vote? Yes. Of the members? The election of the superintendent is. And the decision about how to spend money in the budget? Certainly, the board would have a mandate if there was a majority to pass rules and regulations as to how that was going to be done. The superintendent is the executive of the V.A.C., and the V.A.C. board is essentially the legislative. Inform that we'll pass policy, and then the superintendent will execute that policy. Well, the way I understand the statute, that's why every unit, post, ship, whatever, sends a delegate. And the purpose of those delegates, I assume, is to vote, or to discuss and be I would just assume, are you saying whoever the superintendent is, it's done his way, and as long as he's the superintendent, you elect him and he makes all the decisions, he or she makes all the decisions as to how money is going to get spent? No, I think that the board has significant influence in that process. I think the V.A.C. board and all the chapters and posts would. As individuals, the chapters and posts can apply directly to the county. Once a V.A.C. is formed, then all the chapters and posts, all of their authority to go to the county is now vested in the central committee. And the superintendent is the person that is the liaison to the county board. He's the person that is managing the day-to-day. It's a full-time position, I believe, commonly, at least it is in Grundy County. He's there in the office to receive veterans and to help them with the assistance of his staff. So what is the difference between one or the other running it? Well, I suppose they can both, you know, there's commonly multiple people who can do a job well. The dispute in this case is which has the color, which is the lawful of V.A.C., which has the authority to receive the money. Let me rephrase the question. How is the money spent on this litigation helping veterans? It's not. Let me follow up with that question. Since this case, and there have been multiple cases, since this case started in 2011, how many dollars do you think the attorneys have received versus the money that could have gone into the veterans' pocket? I received far less than the other attorneys, but I believe it's been a lot. Are you working pro bono? I have not been paid, Judge, the county has not. Did you take the case pro bono? No. And do you know if the other side did? They did not. And so Justice Schmidt has a very valid point. How much could that money have helped veterans if either side decided to funnel what they're paying lawyers into what they could be doing for veterans? I agree. I hope we can resolve the conflict. I do. I think that it's... Well, the time has come maybe that the conflict can't be resolved here. And, you know, I was the author in the last case and had my fingers crossed when it went back down that somebody would have a light bulb moment and say, spending an awful lot of money feuding when there's veterans that need our help. So with that said... I understand. And I hope that there can be a clear path forward, that there is an opinion or a decision that establishes who has the lawful authority to act as the VAC. So there is a way for these posts and chapters to move forward. Well, let me... I have... Both my clerks and I have read this chapter, this statute, upside down, sideways, stand on our heads. And we get the idea that in their worst nightmare, nobody in the General Assembly anticipated or foresaw a power struggle between people that the Grand Poobah veteran helper, as opposed to spending money to help our veterans. And I don't think the General Assembly ever saw this coming, that they anticipated people were better than that. I think that the VAC is given, and I'll return to the word autonomy to some extent, to manage these kinds of conflicts themselves. They're given the authority to pass bylaws. The superintendent is required to follow those bylaws. As a deliberative body, the VAC can manage itself. And in this case, they did have bylaws. There is a bylaw that allows for the removal of a superintendent, if there's a vote at a meeting. There are bylaws that deal with changing the bylaws. And some of these disputes revolve around one bylaw, which requires that the members of the committee establish that they are an honorably discharged veteran. That's something that was enacted by the VAC. It's something that could be removed by the VAC. Well, what the statute says, the statute says that each post, ship, or each unit of each veteran's unit, they will decide who their delegate is to the VAC. Not the VAC tells them who they can send and who they can't. And the VAC, by passing the bylaw, has changed in some form who they want serving honorably discharged veterans. So the chapters and posts aren't being told by the VAC, you must send, for example, Mr. Munson. He will be your delegate this year. But they're setting a standard. I believe they would set a standard for age. They could say we want people that are 21 and older to serve on the board. So what do you do with the statutory language that says the delegates will be selected by the post, or the unit, or the ship? You allow them first to pick their delegate, and second to participate in whatever rules and bylaws the VAC might pass that would talk about who it is that can serve on the VAC. So if they set a standard for age, if they set a standard that you must be a member of at least one chapter and post before you can serve on the VAC, or they could set a standard that you're either related to or a descendant of a veteran. So they're not picking the delegates for these chapters and posts, they're just setting a minimum standard. And the statute says that they cannot provide aid to non-honorably discharged veterans, they must provide it to honorably discharged veterans, but I think it's a strong statement of policy. And I think you would want, if available, honorably discharged veterans to do that. The chapters and posts made a decision in the bylaws that they believed there were. But if one of the posts says we've got this fellow here who's hypothetically is not, now I would probably believe that you're right to the extent that they can't send somebody who's dishonorably discharged, but some of these that say never served, but here's a person whose heart is in the right place, he's really smart about this or that or the other, and maybe he's a accountant, maybe he's whatever he is, and he really wants to help better, maybe because of a father, a brother, who knows. It's because his or her heart was in the right place and they said we want to send this person who's our delegate to the VAC because they know how to get things done. And the statute says the chapter posts, they decide who, they pick their honorably discharged veteran. Where in the statute is the applying authority for that? Well, the statute says that they can pass bylaws and rules. That's the section of the statute that I'm relying upon and saying they have the authority to do this. But for the sake of argument, they don't. If the statute requires that the chapters and posts be completely autonomous in their decision to send whoever they want, a non-veteran, a non-member, a minor, whoever they might want to allow a vote. Well, those persons have to be members of that, a member of the postship or whatever, and these units are all organized under law. I suppose that would be up to the chapters and posts if they were given that complete autonomy, whether they had to send a member or a non-member. But I think the larger question in this case is, let's say that that's the case. Let's say that the statute prohibits the VAC from having a bylaw, even though it was elected or put in place by a majority of the chapters and posts. What's the effect of that? And what I believe the county and the second VAC is arguing is by passing that bylaw or by continuing to have that bylaw on the books, this VAC does not exist. That as a matter of law, by passing a bylaw, that is in excess of the statutory authority, the VAC has extinguished itself, which I don't think there's any basis for in any case law that I can find. The county board passed an ordinance that abolished the VAC, but the argument could not be made that the county no longer exists, that there is no county board. The proper remedy is, if there was a lawsuit filed to address that specific bylaw, that the bylaw be stricken, that it be held void. And if it is, then the bylaws provided is to be taken out of the bylaws at the next meeting. So what happened to the first VAC? That's, I think, the overarching question of this case. There's no evidence that they have excluded anyone after the time of the stipulation. They certainly have dwindled in membership and languished because there's been no funding for years, because the county board has been funding the second VAC even after the decision of this court that they had no authority to establish a second VAC to abolish the first one. So if there cannot be a DD 214 requirement. Let me ask you this on that line. So let's suppose we've got a VAC, because a VAC is not mandatory, right? And if you've got a county with multiple units of, you know, veterans units, a VAC is, you know, they can organize together into a VAC, or it says they don't have to. So what happens if you get a VAC and there are, let's say there's 10 units of veterans groups, and only four of them want to belong to and organize. Can they organize into a VAC if only four want to do it? It's an interesting question. I've read the statute probably as many times as you have, and there's nothing in the statute that deals with the solution of a VAC. Well, let me just say in the initial, and then if that happens, if you've got a VAC, you've got these other groups that aren't members of it, then wouldn't you go to paragraph, under paragraph two, would they be able to send their request for veterans aid as they would just as if there were no VAC? I don't think so. I think once there is a VAC, all the power that was previously vested in the chapters and posts is then divested and vested in the VAC. Once there is a central commission, then the county funds the commission and does not have to fund all the individual chapters and posts. I think that the chapters and posts will have to agree to establish the commission, and the establishment isn't disputed in this case, and I suspect that if the commission decided to disband by virtue of the bylaws or otherwise, that the chapters and posts could then seek funding directly from the county, but I don't think one chapter or two chapters can unilaterally or bilaterally decide to approach the county and say we're not dealing with the VAC, we don't want anything to do with them, so we'd just like you to fund our needs privately. I think the county could properly say no. Counsel, that's two minutes. Mr. Geiger, do you also agree that there can only be one VAC? Yes. I think the statute is clear on that point. I think it is, too. The only other topic I'd like to address briefly before my time is up, well, there's several topics I'd like to address, but the one I have time to address, and I will, is my appointment in this case. There has been, the county has filed some arguments saying that the court abused its discretion by appointing me, and some of the cases I've cited when I discuss what a state's attorney has the authority to do, which I think is essentially the question, could a state's attorney involve himself in this case, and I just, the first argument that was made in the reply, which I want to address, this is the reply to the county, which I didn't have the opportunity to brief, was that the statute requires that there be a conflict before you appoint a special state's attorney, and in this case, the state's attorney filed a motion, and this is in the common law record, page 263 and 264, saying he had a conflict. He filed a motion saying I can't represent the county, we need to appoint someone, which is how Mr. Mattingly was appointed in this case, and there was no conflict. The state's attorney has already conflicted himself out. Well, whether there's a conflict or not, is the BAC a unit of county government? Yes. I believe it's a unit of, no, it's a unit of local government. Doesn't the statute specifically say, notwithstanding all this stuff, that the BAC is not? Yes, it's a unit of local government. It's a statutory creature. I think it's the same as a water district, or other municipal or quasi-municipal entities, and the cases that I've cited, Gowen versus Newbridge, and People versus Bodecker, specifically talk about what can dissolve those kinds of municipal or statutory creatures, and they say that they cannot be That's an argument more closely related to whether or not the first BAC still exists, but the point I was trying to make in purpose of my appointment is all those cases are state's attorneys representing individuals or private interests that are being filed against government entities to either strike a school district to say that does not exist, to say that a water district doesn't exist, to say that water district commissioners are not properly appointed. Counsel's time. Well, let me just ask, does it make any sense to you that they would say, gee, the state's attorney is going to bring an action on behalf of the county against ACME, you know, anybody, and this group out here, the citizens for whatever, and then they say, well, but since the county's bringing this action against there, to be fair, we ought to have the county pay for their lawyer in a civil action. Does that make any sense to you? Well, to appoint someone to represent an issue that is of great public interest and importance and to address the validity of an elected position, whether or not a superintendent is a superintendent versus claims being made by third parties to that same position, I think is different than a private cause of action, county versus private individuals, for whatever reason. There is no right to a lawyer in a civil case, is there? Not unless the civil case includes some kind of criminal penalty. Not as a constitutional right, but the state's attorney has the right to intervene in matters of public interest to see that the law is being followed and to see that people that have been properly elected to positions are able to serve in those positions, which is why I think that the appointment was appropriate in this case. Thank you. Thank you, Mr. Geigert. Ms. Preston. Good morning. Good morning. May it please the court and counsel, I'm Megan Preston on behalf of the commanders of the post and the various post and chapters. Are you a special state's attorney? No, I'm not, Your Honor. So you're being privately compensated. Yes, Your Honor. The first VAC in this case exceeded its authority under the statute by attempting to usurp the authority of the various posts and chapters to appoint its own delegates. The whole purpose of the VAC under the Act is to provide a collective endeavor of the various posts and the chapters to appoint delegates, manage all of the posts and the chapters, and give everybody a say in what's going on with those chapters. Section 9 of the Act is very clear that it is up to the posts and the chapters to appoint their own delegates. There's no authority for the VAC to approve or disapprove of any of the delegates sent by the various posts. Mr. Geigert raises the point that the first VAC wasn't requiring any specific delegates to be sent. That may be true, but it was saying I'm maintaining authority to say your delegate can or cannot vote. So it really has the same effect by not permitting the delegates chosen by the posts to have a say in what's going on with the VAC. Well, you do have to be an honorably discharged veteran to vote for a superintendent, don't you? We've got that one election that the statute would seem to indicate that you've got to be an honorably discharged veteran to vote for. You know, I'm not certain on that, Your Honor. But regardless, it's up to the posts to choose which veteran they're going to send to sit. And there is no authority under the Act either way to say we don't believe that your chosen delegate is an honorably discharged vet and to require any proof of that. There's a little bit of factual dispute in the record about whether the DD214 even does what the first VAC wanted it to do, whether it actually proves that a veteran is honorably discharged or not honorably discharged. The form itself is a form indicating that somebody has been released from active duty. And the testimony from Mr. Bach during the trial court's hearing was that he received the DD214 after he was released from active duty, but while he was still a reservist. So I don't think that it's been demonstrated a DD214 actually proves that somebody's been honorably discharged as opposed to being released from active duty. So, for example, if we had a reservist who had never served in active duty, there's not testimony establishing that he would actually have a DD214. After we move past the fact that the first VAC cannot approve or disprove of the delegates sent by the various posts, the question is, did the first VAC extinguish its own legal status by refusing to allow the delegates to participate? And I believe that it did. In the first decision from this court, the court held that a duly organized VAC could extinguish its own legal status by failing to maintain a collective endeavor that allows each post to annually select its own delegates for the VAC. The trial court found that that's exactly what happened in this case. The first VAC extinguished its legal status by engaging in certain wrongful conduct. That conduct included its refusal to allow the delegates chosen by the posts and the chapters to participate. That finding should only be overturned by this court if it's against the manifest weight of the evidence, which is, of course, when the opposite conclusion is apparent or when the findings appear unreasonable, arbitrary, or not based on the evidence. That's not true in this case. It's very clear that certain delegates weren't allowed to participate in the election, and I think that's sufficient for the trial court to have found that because of that, the legal status was extinguished. I think it's important to note that there was no dispute, or there was evidence, at least, that demonstrated that Mr. Buck was honorably discharged, and it was acknowledged by the first VAC that Mr. Love was honorably discharged. So the two vets at issue who weren't allowed to vote are clearly honorably discharged veterans. Again, the DD-214 doesn't necessarily establish that somebody was honorably discharged, only that they were discharged from active duty. The trial court also cited two prior opinions from the first VAC that it had violated the Open Meetings Act in 07-MR-79 and that it usurped the authority of the various posts, and that was in Case 11-MR-74. The VAC's exclusionary actions, I believe, extinguished its legal authority because it really abrogated its purpose under the Act, which was to provide a collective endeavor. Here there was no collective endeavor because all of the posts in the chapters weren't allowed to participate. Compare that to the second VAC, which at least notifies all of the various posts and chapters of meetings and gives everybody the option of participating. But if the first VAC is not doing things right, is the proper remedy to say, gee, you don't exist, they will not recognize you anymore, or to bring an action and say, hey, these are the rules, play by them. And a writ of mandamus, for example, if he's an elected official, say, look, you let these people vote, and then if that person doesn't let them vote, then he's in contempt of court and he sits in jail until he does let them vote. It would be a civil contempt. He can sit in jail for a week or ten years, however long it takes him to let these people vote. Wouldn't that be a way to do it? Perhaps it may be a way. I think, though, that that would be more appropriate in cases where the wrongful conduct of the first VAC is not so severe. I believe that in this case, by refusing to allow the chosen delegates to participate in the first VAC, it's really abrogating its entire purpose under the statute. Its whole purpose is to provide a means to allow all of the posts to have one voice together, and that's exactly what it wasn't doing. So this isn't just a case where they're doing something that maybe some of the posts don't like, or that could be done differently, or maybe some way exceeding their authority. This is a case where they're actually doing something that defeats their entire purpose. Is this a case that could have been resolved by amending the bylaws? I don't know the answer to that. I think that there would still be concern over whether the delegates would actually be allowed to be seated. I can't say that I know with certainty what would have happened had other conduct been engaged in. It sounds like what the first VAC is arguing is that it was following its bylaws, and that the challenged actions were a result of following its bylaws. If the bylaws are creating a problem, it would seem that you could resolve it relatively easily just by amending the bylaws with the agreement of all of the people who are involved in the VAC. Well, at this point, we're some three years past the time when the conduct occurred, when the delegates weren't allowed to participate, and I don't see any evidence in the record that there's been even an attempt to change the bylaws. So at this point, the bylaws that are currently in effect with the first VAC would still require delegates to prove that they're honorably discharged. But now there are two VACs, and the membership is all split, so there's not much opportunity to do that. That may be. I don't certainly know the answer to that. I apologize. I should know the facts better. But what was the vote that Mr. Buck and the other delegates were not allowed to vote on? What was the issue? For the superintendent. Thank you. Just with my last few seconds, I do want to address the stipulation that was raised by Mr. Geiger. I think that we properly cited cases demonstrating that the stipulation was not necessarily conclusive. The court is not required to follow the stipulation. The stipulation only indicated that the VAC existed and was formed under the Veterans Assistance Act as of a date certain. There was no stipulation as to its legal status under the act at that time, and I think that's what the court found when it remanded the case originally, was that there still needs to be a determination as to what the legal status is, not just the factual issue of whether the VAC exists. It obviously existed. It had employees. It maintained some sort of an operation. It held meetings. But whether it had the legal status under the act, and I think that's the distinction. It was a factual stipulation. The parties can't stipulate as to what the legal effect was, and they didn't stipulate its legal effect, just that it existed by holding meetings and that type of thing. So I don't think that there's any issue with the trial court relying on things that occurred before December 2011 and finding that the VAC extinguished its own legal status. Thank you. Thank you. Mr. Maddenley? Maddenley. Please, the court, counsel. I'm Michael Maddenley on behalf of Grundy County, the appellee, and also the cross-appellant. I'd ask the timer to tell me when there's about three and a half minutes left because I want to make sure that I get into the cross-appeal with any discussions here. But I want to first try to address some of the issues that the court has raised in the oral argument before I got here. I believe that the county's brief states that the first VAC exceeded its statutory authority when it created bylaws that restricted delegates who could vote in their organization. The VAC is a unit of local government, and under the constitutional restrictions that it has, it only has the authority to pass laws or rules that it is authorized to do so. There is no statutory authority in the Military Veterans Assistance Act for a VAC to restrict the voting rights of a delegate from any post, and I'm just going to call them posts, participating on the VAC. Why is the county taking a position on that? I think that's a position of public interest as to who would be, who has the right to vote in an entity. Isn't the county's only interest who to pay? That is a, who to pay and the amount of money to be paid are the county's issues. But how do we know who to pay? Well, because the courts are giving you guidance. I believe the court. The trial court has given you guidance. I think the trial court gave us very good guidance, and I think this court in its prior decision, what I call months in one, provided very good guidance for what happens if a VAC is not complying with the statute and that, in fact, it can extinguish itself for failure to do so. Did the trial court give you guidance on remand, who to pay? I think the trial court has given us guidance right now on the first remand as to who to pay, as it followed the instructions of this court to determine that the first VAC had extinguished itself. And you are providing funds to the second VAC? All veterans' needs are being served by the county, yes, that are known through the second VAC. So I don't understand why you're taking a position on whether the first VAC extinguished itself. It's not an issue you have standing on, I don't think. We've been brought into this litigation, we are here to take a position. How did you get brought into the litigation? We were named as a party to the suit. Because Mr. Monson wanted you to pay? No, this did not have to do with, this had to do with the actual formation. This was a declaratory action as to who was the VAC that was valid. That's how we were brought into this action, and that's why we are here arguing. Because we were brought to the table to argue. Because the county board took an action that recognized the second VAC. That's how you got brought into the deal? Initially, initially. Also, I believe, and to respond to a question by Justice Smith, there is no requirement that a delegate has to have an honorable discharge. I believe that your prior comments were saying that. Even in voting for the superintendent. Maybe, that's another way of looking at it, the superintendent himself must be elected from. In other words, the superintendent must be an honorably discharged veteran. That is correct. That was clear in the statute. That is a provision where honorably discharged veterans is provided for in the statute. The other is who is to receive the benefit from the organization. But the organization itself and its component members, there is no reference in the statute to being an honorably discharged veteran. In fact, the statute in one place comprehends, because of the time it was made in 1907, that there could be areas of a county or a township or a town that didn't even have a military veterans organization. And in certain code sections, it provides how non-military personnel or former veterans could form together in order to create benefits or cause the county or the supervisor of general assistance to pay for military assistance. So to have a component that is requiring an honorably discharged veteran to be a delegate, I think, when reading the statute in a whole, is not well found. Also, I believe that the counsel for the petitioner indicated that there was the ability to make rulemaking. Rulemaking is restricted under the statute to two things for a Veterans Assistance Commission. One thing is to make rules about employees. The other is to make rules about how the monies that are allocated for indigent veterans will be distributed. Those are the only two areas in which rulemaking is allowed under the statute. Well, let me ask you this. If a VAC is considered analogous to a unit of local government, is a municipality a unit of local government? No. Is a police department? That I do not know the answer to. I believe that probably falls either under a county or a municipality's organization. There is a separate constitutional provision from what a municipality is. I believe in the opinion of the county, this first case was remanded back to the trial court with instructions. Those instructions were followed. Specific findings were made by the trial court, and those findings are appropriate and well-founded within the record. The record supports the findings in the order, and for that reason the findings in the order of the trial court should be affirmed. With that, I'm now going to move to the cross-appeal issue, unless there are any other questions of the panel. The counties brought a cross-appeal in this matter on the issue of the appointment of a Special Assistance State's Attorney to represent the first VAC. The background or the facts that are involved in that was proceedings commenced in December of 2011 in the underlying actions. The issue and the proceedings dealt with the existence of the VAC in Grundy County. There were three possible outcomes that I'm aware of. One, that the months in the first VAC existed. Two, that the second VAC existed. Three, that there was no VAC from those proceedings. There was the petitioner, the months in VAC, hired a private attorney without a court appointment of a Special Assistance State's Attorney in December of 2011. The disposition was entered by the circuit court in January 2012, finding that the months in VAC did not exist. That was eventually vacated and remanded back under appeal. The appeal was taken, and the result of the appeal was a remand and further hearing. A mandate by this court was issued in July of 2013, and it was only in July of 2013 that the petitioner, Munson, et al., filed a petition for appointment of a Special Assistance State's Attorney. Objection was filed by the county on the basis of four objections, four grounds. The court ordered the appointment of Mr. Geiger as a Special Prosecutor over the objections of the county. The appeal of that order was taken as a cross appeal as a part of these proceedings. There are four bases by which the county objects to the appointment of a Special Assistance State's Attorney to represent the VAC. The first issue or point that the county would like to make is that there needs to be a statutory duty for the county State's Attorney to prosecute or defend matters on behalf of an organization or an entity or person in order for there to be a need for an appointment of a Special Prosecutor. This court specifically addressed that issue in the case of Hazen v. County of Peoria. It's a case that deals with a Veterans Assistance Commission issue in which the county and the Veterans Assistance Commission were in dispute over an issue. In that case, the issue I believe was, there were a couple of issues, but the one that I recall is that it was dealt with the tax levy regarding what amount of money should be levied and the tax levy for the VAC under specific provisions of the Revenue Code. In that case, this court found in looking at both of the statutes and interpreting them for what are the State's Attorney's duties and what is the discretion of the court to appoint a State's Attorney and determine that since a VAC is a unit of local government and not a county office, that office is not entitled to legal representation of the county State's Attorney or for payment of fees from the county's general fund or payment of an attorney. So I believe that under the Hazen case, the trial court was without discretion to appoint a Special Assistant State's Attorney under the Enablement Statute at the taxpayer's expense to proceed in this civil action against the county by the VAC or the, as it turns out, the extinguished VAC and private individuals proceeding against the county. After the order of the court was made in August of 2012, I believe, I know Mr. Geiger provided invoices during the proceedings and I believe that everything was paid up until the final order of the court in November of 2013. Is that amount reflected in the briefs? That amount was not stated in the briefs. So assuming, for the sake of argument, we may agree with you, how do we handle the monies that have already been paid? What is your position? It's not in the record or the briefs, I guess, but I have to tell you there is a signed agreement between the county and Mr. Geiger and his clients that we would pay them subject to determination of what rights were on appeal. But if amounts have already been paid, do you have any doubt that they're going to be refunded to the county? We would ask under the court order that they be disgorged and returned to the county. Are you at liberty to tell us generally the amount of funds that Mr. Geiger to date, I'm guessing he hasn't billed for the appeal yet? I believe he submitted a bill for the appeal. For the last appeal? Yeah. For this one as well? No, I don't believe he submitted a bill for the last appeal because the trial court's order was specific in that the appointment only occurred as of the date that he filed his petition, and so any action that was taken prior to the date of the petition being filed was not something that the court would award and the county did not pay on any prior. If I'm guessing, we're talking in between $10,000 and $15,000, but Mr. Geiger should be able to address that issue with the court. And your compensation is only for representing the county? That is correct. As I said, there are four bases, and I've touched on one, why I believe that there should not be an appointment of a special assistant state's attorney. The second point the county raises is that how can a VAC that is found to have extinguished itself by the trial court in December of 2011 have any existence or standing to even be asking for an appointment of someone to act as a special prosecutor to prosecute or defend its claims as it does not have an existence. I point to the court's ruling in months in one in support of that position in that in that in months in one, the court specifically said that if it is found that a VAC is not acting as a cohesive unit, then it has extinguished its existence. That is exactly what the trial court found in this case, and therefore that existence was extinguished as the court found back in December of 2011, and the petition for appointment of a special prosecutor didn't occur until July of 2013. I don't believe that at that point there was any legal existence of the VAC, of the first VAC, and it does not have a legal existence to allege an injury or substantive legal protected interest recognized under law that it doesn't have standing to bring such a claim or to make a petition for such appointment. That would be under Illinois Municipal League versus Illinois Labor Relations Board. The third argument, or fourth argument that I had, I'm going to skip to real quick, is that there was a waiver under the Hazen case. The court specifically said that if there was going to be an appointment of a special prosecutor to represent a party in an action against the county, that had to occur early in the proceedings. This request for appointment occurred over 19 months after the request, or after the proceedings started. I don't believe that's early in the proceedings. You only have to remand from this court, and there should have been a waiver of the ability to make such an application. And finally, a public official who's not operating within the scope of the authority does not have the right to then make a claim for protections for a special prosecutor, and it's clear in this case that the first VAC was acting outside of its scope of authority when it prohibited voting delegates from certain posts to participate in VAC meetings, and I point to the case of People v. Clark in support for that. I also point to Munson, and I would also point to the case of People v. Wilkinson in which this court held that a person has the right to hire a private attorney even if they're a public official acting in a public capacity, but if they do so and they have not sought court appointment of a special prosecutor, then they're not entitled to reimbursement of their fees until such application has been made. For the foregoing reasons, I'm asking that this court reverse the trial court's decision with respect to the order appointment of a special assistant state's attorney at Brett Geiger for the VAC, order that that order be vacated, and ask that any funds that were paid to Mr. Geiger be discouraged and rebated back to the county. Thank you. Any other questions? Thank you, Mr. Mattingly. Thank you, Justice. Mr. Geiger, any rebuttal? Yes, Judge, I am. Mr. Geiger, as you come up, I hope you understand my questions are not intended to make you feel like you don't deserve to be paid. Your work is fine work, and it's evident in the briefs and your argument here today. The issue is who's responsible. I understand, Justice, and I do not take any of your comments in that way. First, I'd like to comment on I think a question you asked of Ms. Preston as to whether or not they're being paid privately. You'll see in the VAC budget that they're being paid by the VAC who is being paid by the county. So the county is paying for the second VAC's legal counsel, which is how their bills are being paid. The county is paying Mr. Mattingly directly, and my bills were paid for a period. Not before my appointment, clearly. After my appointment and through the date that the trial made the decision that the second VAC was the valid VAC, some of the bills were paid. The agreement Mr. Mattingly was discussing is a one-page document I signed which said, by them paying me, they were not waiving their right to appeal the decision of the appointment, which I would have raised prior to today's date if I believed they had waived their ability to appeal my appointment. But I signed something saying, no, I'm not going to play a game of gotcha and say, ha-ha, you cut your first check. Now you can't contest that I was properly appointed. So that was the agreement that I signed. It's not off record, but I acknowledge that it exists. Mr. Mattingly argued that the VAC may only make rules regarding employers or how to spend money. I don't think that that narrow of a construction should be accepted by the court. I believe a body of government can make the rules necessary to function, which would include managing elections, meetings, removing and appointing officers, removing and appointing directors to the board. Even if those rules are contrary to the enabling statute? If the rule is contrary, Judge, I think that it could be found void as contrary to statute. I don't think that it would invalidate the existence of the body of government. But clearly there's some rulemaking authority beyond that, just who to employ and how to spend the money. Or a deliberative body could not function. Petition. I'm sorry, I'm reviewing my notes. There were some comments by Ms. Preston about the content of the stipulation and the scope of that stipulation. She indicated that it acknowledged generally that there was a VAC, but said nothing about its legal purpose. I think you'll find, contrary to that fact, that the stipulation is very specific and states that the VAC as of December 12th is a local government entity in existence, created pursuant to the Military Veterans Assistance Act with a citation directly to the statute. So I think it was very clear when the stipulation was made that this first VAC or Munson VAC existed. So what happens when a VAC, say, starts out the right way? But then what's acting the right way? What do you do with it? Well, you could file a quarteronto, a lawsuit, I believe, that would question whether or not the superintendent was properly elected. You could file an injunctive lawsuit, as you indicated previously, to order that elections take place. You could file a declaratory judgment action to ask that one bylaw be declared null and void according to the statute. Or, as I believe Justice McDade mentioned, you could appear in a meeting and attempt at least to vote to change the bylaw that you're objecting to. What if they won't let you vote? They say you're not an honorable discharge veteran. Then I think that there would be a much clearer case to be made during one of those other proceedings, by bringing one of those other proceedings. If there was, in fact, people present and insisting on voting and they were denied voting, the right to vote, then I think there would be any numbers of relief available to them to change that bylaw. Counsel, that's one minute. I don't believe I have any further comments. I do. I'm sorry. The trial court's order on remand, following remand, found that the first VAC extinguished itself. Did the trial court make any findings as to whether the second VAC was properly formed according to the statute? I believe it found that it was. Were there findings? If you don't know, I'll let you know. I would have to review the order. I don't know that there's factual findings to support the conclusion. Is it possible that Grundy County has no VAC at this time? I know you say there's one, being your client. Is there a possibility that neither has been properly formed or properly is operating? I do not believe that there's any legal basis to invalidate the first VAC. If your previous opinion, Justice, is taken literally and you must have all chapters and posts participating to have a VAC, then there clearly is one. I think everyone's acknowledged that. They're divided. You brought up a very interesting point in rebuttal in response to the payment of the second VAC's counsel. Ballpark figure, do you know what the county is, in your view, obligated to pay you and what the county has paid them? I think that our bills, when I've seen them, have been equivalent. They've been almost the same. A percentage of mine have been paid. If the VAC does not exist, my fees from the date that the lawsuit began to the date of appointment, I do not believe can be ordered that I be paid as a special prosecutor. If the VAC does exist, then I can be paid through the general county funding process. Has there been any attempt by either counsel since the date of remand to sit down and mediate these disputes? Any channel of communication that's possible? I've had brief conversations. But I think that our clients are deadlocked. One, they both will not compromise the position of superintendent. There's only so much that refined lawyers can do. Yes. You've answered my questions. I appreciate your indulgence. Thank you. Thank you. We thank all of you for your arguments this morning. We'll take the battle under advisement and we'll issue a written decision. The discussion will start in five minutes with a reply on the product.